United States District Court
Eastern District of New York
-----------------------------------------------------------------x

| | |
|---|---|
| Tahir Alston, | **Complaint and Demand for a Jury Trial** |
| Plaintiff, | |
| | 16-CV-_537_____ |
| -v- | |
| The City of New York, New York City Police Department ("NYPD") Officer Brian J. Chichotky (Shield No. 726), NYPD Officer John Doe (the name "John Doe" being fictitious as his true name, rank, and shield number are not currently known), in their individual capacities, | |
| Defendants. | |

-----------------------------------------------------------------x

Plaintiff Tahir Alston, through his attorney Robert M. Quackenbush of Rankin & Taylor,

PLLC, as and for his complaint, does hereby state and allege:

## Preliminary Statement

1. This is a civil rights action brought to vindicate plaintiff's rights under the Fourth and Fourteenth Amendments of the Constitution of the United States, through the Civil Rights Act of 1871, *as amended*, codified as 42 U.S.C. § 1983.

2. Plaintiff Tahir Alston's right to be free from unreasonable seizures was violated when officials of the New York City Police Department ("NYPD") unlawfully arrested him for accepting a ten dollar bill from his friend, an act which the officers unreasonably concluded was a drug transaction. By reason of defendants' unlawful arrest, Mr. Alston was deprived of his rights secured by the Fourth and Fourteenth Amendments.

3. Mr. Alston also seeks an award of compensatory and punitive damages and attorneys' fees.

### Jurisdiction and Venue

4.  This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3-4). This action is brought pursuant to 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments to the Constitution of the United States.

5.  Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that Mr. Alston's claim arose in the County of Kings in the State of New York, within the confines of this judicial district.

6.  An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

### Parties

7.  Plaintiff Tahir Alston was at all times relevant to this action a resident of the County of Kings in the State of New York.

8.  Defendant The City of New York ("City") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the NYPD.

9.  Defendants NYPD Officer ("P.O.") Brian J. Chichotky (Shield No. 726) and P.O. John Doe (referred to collectively as the "officer-defendants") are and were at all times relevant herein, officers, employees and agents of the NYPD.

10. The officer-defendants are being sued herein in their individual capacities.

11. The true name and shield number of defendant P.O. Doe is not currently known to Mr. Alston. However, P.O. Doe was an employee or agent of the NYPD on the date of the incident, April 16, 2015. Accordingly, he may be entitled to representation in this action by

the New York City Law Department ("Law Department") upon his request, pursuant to New York State General Municipal Law § 50-k. The Law Department, then, is hereby put on notice (a) that Mr. Alston intends to name said officer as defendant in an amended pleading once his true name and shield number become known and (b) that the Law Department should immediately begin preparing his defense(s) in this action.

12. At all times relevant herein, the officer-defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of NYPD and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD.

13. The officer-defendants' acts hereafter complained of were carried out intentionally, recklessly, with malice, and in gross disregard of Mr. Alston's rights.

14. At all relevant times, the officer-defendants were engaged in a joint venture, assisting each other in performing the various actions described herein and lending their physical presence and support and the authority of their offices to one another.

### Statement of Facts

15. The arrest herein complained of occurred on April 16, 2015 at approximately 3:45 p.m. in the vicinity of 2091 Pacific Street in Brooklyn, New York.

16. Mr. Alston received a phone call from his friend Justin informing Mr. Alston that Justin was nearby and wanted to give Mr. Alston the ten dollars that he owed to Mr. Alston.

17. Mr. Alston walked outside to meet Justin.

18. Both Mr. Alston and Justin are young Black men.

19. Justin gave Mr. Alston ten dollars, and the two friends chatted for a short while.

20. After the conversation ended, Mr. Alston walked back towards his home.

21. Before reaching his front door, Mr. Alston saw plainclothes officers detain Justin.

22. An unmarked car containing the officer-defendants then approached the area where Mr. Alston was standing.

23. Without asking for or receiving Mr. Alston's consent, the officer-defendants conducted a pat frisk and found several hundred dollars which Mr. Alston had in his possession.

24. Nothing of consequence other than United States currency was found on Mr. Alston.

25. The officer-defendants placed Mr. Alston under arrest and took him to the NYPD's 73rd Precinct stationhouse located at 1470 East New York Avenue in Brooklyn.

26. Mr. Alston spent the night in custody and was presented before the Brooklyn criminal court on April 17, 2015.

27. In court, Mr. Alston was charged with criminal sale of marijuana in the fourth degree (N.Y. Pen. L. § 221.40), criminal possession of marijuana in the fifth degree (N.Y. Pen. L. § 221.10(1)), and unlawful possession of marijuana (N.Y. Pen. L. § 221.05).

28. These allegations were based solely upon P.O. Chichotky's false allegations that he observed Mr. Alston give a bag of marijuana to Justin in exchange for money.

29. Mr. Alston was thereafter released on his own recognizance.

30. In subsequent court appearances, the District Attorney offered Mr. Alston an adjournment in contemplation of dismissal – offers which Mr. Alston refused unless the District Attorney released the money the officer-defendants seized from him.

31. On July 23, 2015, the District Attorney agreed to release to Mr. Alston the money seized from him, and the case was resolved with an adjournment in contemplation of dismissal.

**Claim for Relief**
**Deprivation of Rights**
**Under the United States Constitution Through 42 U.S.C. § 1983**
*(Against the all defendants)*

32. Mr. Alston incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

33. The officer-defendants, under color of state law, subjected Mr. Alston to the foregoing acts and omissions, thereby depriving Mr. Alston of his rights, privileges and immunities secured by the Fourth and Fourteenth Amendments to the United States Constitution, including but not limited to deprivation of the following constitutional rights: (a) freedom from unreasonable seizure of his person; (b) freedom from arrest without probable cause; (c) freedom from false imprisonment; (d) freedom from the lodging of false charges against him by police officers; (e) freedom from having police officers fabricate evidence against him; (f) freedom from abuse of process; and (g) freedom from police officers failing to intervene to prevent each other's deprivations of his constitutional rights.

34. At all times material to this complaint, defendant City had *de facto* policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

35. At all times material to this complaint, defendant City failed to properly train, screen, supervise, or discipline its employees and police officers, including the officer-defendants, and failed to inform the officer-defendants' supervisors of their need to train, screen, supervise or discipline the officer-defendants.

36. The City's policies, practices, customs and usages, and the failure to properly train, screen, supervise, or discipline, were a direct and proximate cause of the unconstitutional conduct alleged herein, causing injury and damage in violation of Mr. Alston's constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its Fourth and Fourteenth Amendments.

37. The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in the following civil rights actions filed against the City and analogous prosecutions of police officers:

    a. People v. Munoz, 4872-2015 (Sup. Ct., N.Y. Co.); Disisto v. City of New York, 15-CV-3296 (GHW) (NYPD officer indicted for making false statements which were directly contradicted by video evidence);

    b. People v. Alicea, 00012-2013 (Sup. Ct., N.Y. Co.) (NYPD sergeant convicted of 10 felony counts of filing a false document and one misdemeanor count of official misconduct, for falsely swearing he observed two men engaged in a drug transaction, when video evidence clearly showed that the two arrestees had no contact; in response to the indictment, Manhattan District Attorney Cy Vance stated "We rightfully trust our police officers to report their activities truthfully. Those who do not erode the public's trust in law enforcement… To falsely accuse anyone of a drug sale is not only unacceptable, it is a crime.");

    c. People v. Arbeedy, 06314-2008 (Sup. Ct., Kings Co.) (NYPD narcotics detective found guilty of planting drugs on two innocent civilians; former undercover NYPD narcotics officer, Steve Anderson, testifies that fellow narcotics officers routinely maintained a stash of narcotics to plant on innocent civilians in order to help those officers meet their arrest quotas; Mr. Anderson testified concerning the NYPD's practice of "attaching bodies" to the narcotics to make baseless arrests, stating: "It was something I was seeing a lot of, whether it was from supervisors or undercovers and even investigators. Seeing it so much, it's almost like you have no emotion with it. The mentality was that they attach the bodies to it, they're going to be out of jail tomorrow anyway, nothing is going to happen to them anyway. That kind of came on to me and I accepted it — being around that so long, and being an undercover"; the presiding judge, Justice Reichbach, stated: "Having been a judge for 20 years, I thought I was not naïve regarding the realities of narcotics enforcement. But even the court was shocked, not only by the seeming pervasive scope of the misconduct, but even more distressingly by the seeming casualness by which such conduct is employed");

    d.  Colon v. City of New York, 09-CV-0008 (E.D.N.Y.)  In an Order dated November 25, 2009, which denied the City's motion to dismiss on Iqbal/Twombly grounds, wherein the police officers at issue were fired and prosecuted for falsifying evidence in a purported buy-and-bust operation, the Honorable District Court Judge Weinstein wrote:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officer of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration – through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department – there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

    e.  McMillan v. City of New York, 04-CV-3990 (FB) (RML) (E.D.N.Y.) (officers fabricated evidence and used excessive force against an African-American man in Kings County and initiated drug charges against him, despite an absence of any quantum of suspicion);

    f.  Avent v. City of New York, 04-CV-2451 (CBA) (CLP) (E.D.N.Y.) (same); and

    g.  Smith v. City of New York, 04-CV-1045 (RRM) (JMA) (E.D.N.Y.) (same).

38. The existence of the aforesaid unconstitutional customs and practices, specifically with regard to the practice or custom of officers lying under oath, falsely swearing out criminal complaints, or otherwise falsifying or fabricating evidence, are further evidenced, inter alia, by the following:

    a.  In June of 2011, in the case in New York County Supreme Court entitled People v. William Eiseman (Ind. No. 2999-2010), NYPD Sergeant William Eiseman pled guilty to perjury and falsifying police records, "admit[ting] to faking a marijuana case against one man and cocaine-related charges against another – and training young [officers] to falsify paperwork to sidestep legal safeguards." Supreme Court Justice Juan Merchan commented that Sgt. Eiseman's admissions "paint a picture of a police officer who has challenged and undermined the integrity of the entire system we have here."[1]

---

[1]   Melissa Grace, *NYPD Sgt. William Eiseman pleads guilty to lying under oath in plea deal*, N.Y. Daily News, June 27, 2011, *available at* http://www.nydailynews.com/news/ny_crime/2011/06/27/2011-06-27_nypd_sgt_william_eiseman_pleads_guilty_to_lying_under_oath_in_plea_deal.html.

b. In late 2009, a former NYPD officer in the Bronx, Pedro Corniel, was charged with perjury for claiming to have caught a burglar "red-handed," when, in fact, two other officers had made the arrest and handed the arrest off to Mr. Corniel. The suspect was released.[2] Moreover,

> Prosecutors and NYPD Internal Affairs probers have identified as many as two dozen cases in the past year in which cops allegedly made false statements involving routine arrests when the truth would have served them just as well.

> That's a significant increase over previous years, sources said. "In the past, we'd find this happening once or twice a year, and now there are a bunch of them," said one law-enforcement official.

> What has the authorities particularly troubled is that officers historically have lied to cover up more serious corruption, such as the cadre of Brooklyn narcotics cops caught last year stealing drugs from dealers and masking their thievery by filing false reports about what they had seized.

> But internal probers are now finding that officers appear willing to take insidious shortcuts and lie on arrest reports when they are processing even routine collars, such as grand larceny, burglaries and robberies, sources told The Post.

> Their reasons could range from trying to cut down on paperwork to being lazy when filling out arrest and incident reports.[3]

c. In 2007, former NYPD Officer Dennis Kim admitted to accepting money and sexual favors from the proprietor of a brothel in Queens County in exchange for protecting that brothel. Mr. Kim was convicted of those offenses. The 109th Precinct of the NYPD, which used to be Mr. Kim's command, is also under investigation by the United States Attorney's Office for "plant[ing] drugs on suspects and steal[ing] cash during gambling raids." The 109th Precinct is believed to be involved in a practice known as "flaking" wherein police officers plant drugs on suspects in order to bring legitimacy to an arrest. According to Assistant United States Attorney Monica Ryan, members of the 109th Precinct "maintained a small stash of drugs in an Altoids tin for this purpose."[4]

---

[2]   Murray Weiss, *NYPD in a Liar Storm*, N.Y. Post, Oct. 26, 2009, *available at* http://www.nypost.com/p/news/local/nypd_in_liar_storm_qazMBEm3UNJVogv4NdeqcI.

[3]   *Id.*

[4]   John Marzulli, *Claims of Corruption at Queens Precinct Put Crooked Cop's Sentencing on Hold*, New York Daily News, June 20, 2008, *available at* http://www.nydailynews.com/news/ny_crime/2008/06/20/

    d. In December of 2009, two officers from the 81st Precinct in Brooklyn arrested and falsely swore out charges against an undercover officer from the Internal Affairs Bureau. As explained in an article in the New York Post:

> The officers were snared in a sting by Internal Affairs in December when they were told to keep an eye out for people selling untaxed cigarettes in their precinct.
>
> Some time later, they saw a man hanging out on a corner in the neighborhood and found that he was carrying packs of knock-off smokes.
>
> [Sgt. Raymond] Stukes, 45, and [Officer Hector] Tirado, 30, cuffed him, but then claimed that they had seen him selling the bogus butts to two people, according to sources.
>
> Little did the hapless cops know that the man in their custody was an undercover corruption investigator and that the whole incident was caught on video.
>
> To complete the ruse, the undercover cop was processed at the station house so as to not tip off Stukes and Tirado about the sting…
>
> [P]olice sources said [this action] stem[s] from precinct commanders caving to the pressure of top brass to make themselves look better.
>
> "There's pressure on the cops from the bosses and they're getting pressured from headquarters," a police source told The Post.<sup>5</sup>

The officers were indicted for felony perjury, filing a false report and filing a false instrument.<sup>6</sup>

39. The defendants' deprivation of Mr. Alston's constitutional rights resulted in the injuries and

damages set forth above.

---

2008-06-20_claims_of_corruption_at_queens_precinct_.html.

<sup>5</sup>    Larry Celona and Tim Perone, *Cops Sting Cops*, N.Y. Post, July 30, 2010, *available at* http://www.nypost.com/p/news/local/brooklyn/cops_sting_cops_lyItuTeLedhKWtruJZYsdL.

<sup>6</sup>    John Marzulli, *Brooklyn cops charged with barding into sting operation, arresting a fellow officer on bogus charges*, N.Y. Daily News, July 30, 2010, available at http://www.nydailynews.com/ny_local/2010/07/30/2010-07-30_brooklyn_cops_charged_with_barging_into_sting_operation_arresting_a_fellow_offic.html.

## **Jury Demand**

40. Mr. Alston demands a trial by jury in this action on each and every one of his damage claims.

 *Wherefore*, Mr. Alston demands judgment against the defendants individually and jointly

and prays for relief as follows:

 a.  That he be compensated for violation of his constitutional rights, pain, and
    suffering; and

 b.  That he be awarded punitive damages against the officer-defendants; and

 c.  That he be compensated for attorneys' fees and the costs and disbursements of
    this action; and

 d.  For such other further and different relief as to the Court may seem just and
    proper.


Dated:   New York, New York
     February 1, 2016

           Respectfully submitted,

By:  _Robert M. Quackenbush_
           Robert M. Quackenbush
           Rankin & Taylor, PLLC
           *Attorneys for the Plaintiff*
           11 Park Place, Suite 914
           New York, New York 10007
           t: 212-226-4507
           f: 212-658-9480
           e: robert@drmtlaw.com